UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WILLIAM J., individually and on behalf  )
of his minor child, J.J.,  )
  )
            Plaintiff,  )
  )          CIVIL ACTION NO.
VS.  )
  )          3:22-CV-1919-G
BLUECROSS BLUESHIELD OF TEXAS,  )
ET AL.,  )
  )
            Defendants.  )

## MEMORANDUM OPINION AND ORDER

Before the court are Texas Instruments Incorporated ("TI") and Texas

Instruments Incorporated Welfare Benefits Plan's (the "plan") (collectively, the "TI

defendants") motion to dismiss and Blue Cross and Blue Shield of Texas's

("BCBSTX") (collectively, the "defendants") motion to dismiss the complaint of the

plaintiff William J., individually and on behalf of his minor child, J.J. (collectively,

the "plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants

Texas Instruments Incorporated and TI Welfare Benefits Plan's Motion to Dismiss

and Brief in Support ("TI Motion") (docket entry 46); Defendant Blue Cross and

Blue Shield of Texas's Motion to Dismiss Plaintiffs' Complaint and Memorandum in

Support ("BCBSTX Motion") (docket entry 48).[1]  For the reasons set forth below, the defendants' motions are **GRANTED** in part and **DENIED** in part.  The court **GRANTS** the defendants' motions to dismiss as to:  (1) the part of the plaintiffs' 29 U.S.C. § 1132(a)(1)(B) claim where they seek to recover benefits based on the defendants' alleged lack of full and fair review; and (2) the entirety of the plaintiffs' section 1132(a)(3) claim.  The court **DENIES** the defendants' motions as to the remaining parts of the plaintiffs' section 1132(a)(1)(B) claim.

## I. BACKGROUND

On June 16, 2022, the plaintiffs filed suit against the defendants in the Central Division of the United States District Court for the District of Utah.  *See* Complaint. On August 30, 2022, the case was transferred to this court.  *See* Order Granting Stipulated Motion to Transfer Venue (docket entry 17).

This cases arises out of William and JJ's coverage under the plan.  Complaint at 2.  TI is a technology company headquartered in Dallas, Texas, and, at all times relevant to this case, William has been and continues to be an employee at TI.  *Id.* William is JJ's father.  *Id.*  TI offers its employees coverage under the plan, which is a welfare benefits plan under 29 U.S.C. § 1001, *et. seq.*, otherwise known as the

---

[1]     Because the plaintiffs contend that all the defendants are liable for both alleged causes of action, and the TI Motion and BCBSTX Motion both generally assert similar arguments, the court will address both motions collectively.  *See* Complaint (docket entry 2) at 7-11; TI Motion; BCBSTX Motion.

Employee Retirement Income Security Act of 1975 ("ERISA").  *Id.*  BCBSTX is an insurance company, third-party claims administrator for the plan, and an agent for the plan and TI.  *Id.*  At all times relevant to this case, William has participated in the plan and JJ, as William's child, has been a beneficiary.  *Id.*

Because JJ struggled with behavioral and mental health issues, William admitted JJ to Shelterwood for treatment on April 21, 2021.  Complaint at 2-4.  "Shelterwood is a Missouri-licensed residential facility that provides sub-acute inpatient treatment to adolescents with mental health, behavioral and/or substance abuse problems . . . and is classified as an intermediate level of care because it offers services which are less intensive than acute hospitalization but more intensive than outpatient treatment."  *Id.* at 2, 4.  JJ made progress while at Shelterwood and was subsequently discharged on December 18, 2021.  *Id.* at 4.

Shortly after admitting JJ to Shelterwood, on April 23, 2021, William contacted BCBSTX to discuss whether the plan would cover JJ's treatment.  Complaint at 5.  William avers that BCBSTX informed him that the plan would not cover JJ's treatment because "Shelterwood did not have 24-hour nursing care."  *Id.*  William contends that he then requested that BCBSTX "issue a written denial explaining its rationale" but that it refused to do that and "did not advise William of the portions of the [p]lan that it was relying upon to support its denial, nor did

- 3 -

[BCBSTX] advise William of his rights to appeal [BCBSTX's] decision or the time in which [to] do so." *Id.*

On July 24, 2021, William submitted a written appeal to BCBSTX, arguing that the plan should cover JJ's treatment at Shelterwood because "there are no exclusions for intermediate behavior health treatment in the [p]lan and no requirement that such a facility provide 24-hour nursing care." Complaint at 5-6. William alleges that he "requested that [BCBSTX] assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices for residential programs in the state of Missouri where Shelterwood is located as well as appropriately qualified and experienced in order to provide a meaningful response to his appeal." *Id.* at 6. William also urges that he "reminded [BCBSTX] of his rights under both ERISA and [the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA")]" and that because the plan offers behavioral health benefits, it is "required to offer those benefits at parity with comparable medical or surgical benefits and that MHPAEA requires coverage for intermediate facilities such as Shelterwood." *Id.*

On July 24, 2021, an "Appeals Specialist" at BCBSTX named "Jennifer S" sent William a letter denying his appeal because "Shelterwood does not offer 24-hours a day registered nursing services." Complaint at 6 (internal quotation omitted). William avers that the letter cited "various provisions of the [p]lan" but that none of

those provisions "indicated that 24-hour nursing care is required for intermediate behavioral health facilities like Shelterwood." *Id.*  Furthermore, the letter stated that William had exhausted his ability to internally appeal BCBSTX's decision. *Id.* at 7. William has since submitted his claims for JJ's treatment to BCBSTX but states that BCBSTX has not yet processed his claims and instead informed William that "it has asked [his] health care provide[r] for more information and will process the claim once the information is received." *Id.* (internal quotation omitted).  Between the time that BCBSTX first informed William that it would not cover JJ's treatment at Shelterwood on April 23, 2021, and Shelterwood discharging JJ on December 18, 2021, JJ continued to receive treatment. *Id.* at 4-7.

In response to BCBSTX denying William's appeal, the plaintiffs filed their complaint asserting two causes of action. *See* Complaint at 7-11.  First, under section 1132(a)(1)(B), the plaintiffs seek to recover medical expenses that they incurred for JJ's treatment at Shelterwood and that they believe the plan should have covered. *Id.* at 7-8.  Generally, the plaintiffs argue that the defendants breached their fiduciary duties to the plaintiffs by:  (1) failing to abide by the terms of the plan and cover JJ's treatment and applying exclusion criteria that did not exist, even though the plan states that it will provide "benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders[;]" (2) failing to issue a proper denial and appeal of the plaintiffs' claims; and (3) failing to process

- 5 -

and review the plaintiffs' ongoing claims that they submitted with BCBSTX.  *Id.*  The plaintiffs seek monetary damages for the defendants' violations.  *Id.* at 8.

Second, under section 1132(a)(3) and 29 U.S.C. § 1185a, the plaintiffs contend that the defendants violated MHPAEA by:  (1) "applying more restrictive coverage standards, to wit, the requirement of 24-hour nursing care, to JJ's claim for intermediate residential mental health treatment than it does for other types of subacute care;" (2) "by offering an incorrect and arbitrary denial reason that is not based on the terms of the [p]lan;" and (3) "by enforcing more restrictive criteria for mental and behavioral health services as applied to JJ's care for the express purpose of avoiding payment for services."  Complaint at 9-10.  The plaintiffs also aver that they are entitled to "appropriate equitable remedies" for these violations.  *Id.* at 10-11.

On October 11, 2022, the TI defendants and BCBSTX filed their respective motions to dismiss.  *See* TI Motion; BCBSTX Motion.  Generally, the defendants argue that the court should dismiss the plaintiffs' first cause of action for failure to state a claim because:  (1) the plaintiffs do not identify anything in the plan that would confer coverage for the benefits they seek; (2) the plan does not cover services at facilities like Shelterwood if those facilities don't provide 24-hour nursing services; and (3) even if there was a lack of full and fair review, the plaintiffs cannot recover benefits for services that the plan does not cover.  TI Motion at 6-8; BCBSTX Motion at 6-11.

- 6 -

Regarding the plaintiffs' second cause of action, the defendants generally contend that the court should dismiss the claim because:  (1) the plaintiffs failed to state sufficient facts in their complaint to allege that the defendants violated MHPAEA; and (2) the plaintiffs' claim is duplicative of their first claim.  TI Motion at 9-15; BCBSTX Motion at 11-20.  The TI defendants also attached to their motion an appendix that includes an affidavit from one of TI's employees, different versions of TI's benefits plan, a version of TI's summary plan description ("SPD"), and the July 24, 2021, appeal decision denial letter.  *See* Appendix of Exhibits to Defendants Texas Instruments Incorporated and TI Welfare Benefits Plan's Motion to Dismiss and Brief in Support ("Appendix") (docket entry 47).

On October 31, 2022, the plaintiffs filed their response to both motions and attached their own exhibits.  *See* Combined Response to Defendants' Motions to Dismiss and Brief in Support ("Response") (docket entry 49); Exhibits 1 and 2, *attached to* Response as Exhibits 1 and 2.  On November 14, 2022, the TI defendants and BCBSTX filed their respective replies.  *See* Defendants Texas Instruments Incorporated and TI Welfare Benefits Plan's Reply in Support of their Motion to Dismiss ("TI Reply") (docket entry 50); Defendant Blue Cross and Blue Shield of Texas' Reply in Support of its Motion to Dismiss Plaintiffs' Complaint ("BCBSTX Reply") (docket entry 51).

II.  <u>ANALYSIS</u>

A.  <u>Legal Standard</u>

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff[s] must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [the] plaintiff[s'] obligation to provide the grounds of their entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]."  *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009).  The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that [the] defendant[s] [] acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.

The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal* at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader[s] [are] entitled to relief.'"  *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their arguments against the defendants "across the line from conceivable to plausible."  See *id.* at 679-80 (internal quotation omitted).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  If the plaintiffs, however, fail to attach documents referred to in

the complaint, the defendants may attach the documents to their motions to dismiss if the documents are "referred to in the plaintiff[s'] complaint and are central to [their] claim." *Id.* at 498-99 (internal quotation omitted).

## B.  Application

The defendants move to dismiss the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under either ERISA sections 1132(a)(1)(B) or 1132(a)(3).  *See* TI Motion at 1; BCBSTX Motion at 1-2. "Congress enacted ERISA to protect ... the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation omitted).  ERISA includes an "integrated enforcement mechanism," section 1132(a), that is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans."  *Id.*

Two of these enforcement mechanisms are relevant here.  First, under section 1132(a)(1)(B), a participant or beneficiary of a plan that ERISA covers may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Second, under section 1132(a)(3), a

participant, beneficiary, or fiduciary of a plan that ERISA covers may bring a civil action:  "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  *Id.* at § 1132(a)(3).

1. *The Plaintiffs Allege Sufficient Facts to Plausibly Assert that They Are Entitled to Relief Under Section 1132(a)(1)(B), but the Court Dismisses Their Full and Fair Review Allegation*

The defendants maintain that the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim because they did not sufficiently allege that the plan covers JJ's treatment at Shelterwood, and, consequently, they did not plausibly allege that they are entitled to relief .  *See* TI Motion at 5; BCBSTX Motion at 6.  The defendants provide three arguments to support their contention.  First, the defendants argue that the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim because plaintiffs bringing a lawsuit to recover plan-benefits under ERISA must identify specific terms in the particular plan that confer those benefits, and here, the plaintiffs fail to identify any language in the plan that would confer the benefits that they seek.  TI motion at 6-7; BCBSTX Motion at 6-7.

Second, the defendants argue that the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim because the plan expressly excludes JJ's treatment at Shelterwood, and, therefore, the plaintiffs have not plausibly alleged that they are entitled to relief.  TI Motion at 7; BCBSTX Motion at 8.  The defendants' argument

centers on the SPD that the TI defendants attached to their motion, which indicates: that the plan only covers medical and behavioral health care that are "delivered by an eligible provider[,]" which is "anyone who is licensed and provides medical services within the scope of their license – hospitals, doctors, and outpatient care centers;" and that "[i]npatient hospital facilities include but are not limited to hospitals, skilled nursing facilities and hospice facilities[,]" and must "offer 24-hours-a-day registered graduate (R.N.) nursing services."  TI Motion at 7 (quoting Appendix at 110-11); BCBSTX Motion at 8 (quoting Appendix at 110-11).

Furthermore, the defendants point out that the plaintiffs describe Shelterwood as a "residential facility that provides sub-acute inpatient treatment" and compare it to "skilled nursing facilities, inpatient hospice care, and rehabilitation facilities."  TI Motion at 2, 4 (citing Complaint at 2, 9); BCBSTX Motion at 8-9 (citing and quoting Complaint at 2, 9).  Thus, the defendants contend, under the plaintiffs' own description, the plan does not cover JJ's treatment because Shelterwood is an "inpatient hospital" and the plaintiffs do not plead in their complaint that it provides 24-hour nursing services.  TI Motion at 7-8; BCBSTX Motion at 8-10.

Finally, the defendants insist that the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim for failing to plausibly allege that they are entitled to relief, because the plaintiffs cannot recover the benefits they seek based on their argument that the defendants failed to provide a full and fair review.  TI Motion at 8;

- 12 -

BCBSTX Motion at 10.  The defendants aver that a possible lack of full and fair review does not provide an independent basis to recover benefits when the plan does not cover the services that the plaintiffs seek to recover benefits based on.  *Id.* Plaintiffs can recover benefits only for services that plans cover, and, therefore, the plaintiffs cannot create coverage for services that fall outside the plan.  *Id.*

The plaintiffs respond with two arguments as to why the court should deny the defendants' motions.  Response at 3-5, 7-10.  First, the plaintiffs maintain that JJ's treatment is not subject to the plan's 24-hour nursing requirement because: (1) Shelterwood did not provide JJ treatment at an "inpatient hospital facility," but instead provided JJ an "*intermediate* level of care" that is not subject to the 24-hour nursing care requirement; (2) although the plan requires 24-hour nursing care for acute care, Shelterwood provided JJ with sub-acute treatment that is not subject to the 24-hour nursing care requirement; (3) Shelterwood provides adolescent residential treatment and because the plan does not specifically define what this treatment is, the defendants cannot aver that Shelterwood is equivalent to an inpatient hospital facility; and (4) the court must resolve any ambiguity in the plan against the defendants.  *Id.* at 3-4 (emphasis in original).

Second, the plaintiffs object to the TI defendants attaching, and all the defendants citing to, the SPD.  Response at 9-10.  The plaintiffs argue that the SPD "is not the governing document between the parties" because if "there is a conflict

- 13 -

between a [p]lan document and the SPD, the [p]lan controls." *Id.* at 9 (citing *Cigna Corporation v. Amara*, 563 U.S. 421, 434-36 (2011)). Consequently, according to the plaintiffs, "[t]he [c]ourt should not rely on the SPD as extrinsic material when it cannot be enforced against conflicting [p]lan language. The TI [d]efendants have not proven that the SPD is the controlling document in this claim." *Id.* at 9-10.[2]

Although the TI defendants attached different versions of the plan to their motion to dismiss, all of the defendants fail to cite to any version of the plan. *See* TI Motion; BCBSTX Motion. Instead, the defendants mainly cite to the SPD that the TI defendants attached. See *id.* The Supreme Court, however, has explicitly held that, in section 1132(a)(1)(B) cases, courts may not enforce the terms of an SPD "as the terms of the plan itself[,]" because "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § [1132](a)(1)(B)." *Cigna Corporation*, 563 U.S. at 437-38 (emphasis in original). One reason the Supreme Court provides for this rule is that plan administrators

---

[2]    The plaintiffs also assert various evidentiary objections to all of the documents that the TI defendants attached, such as that they lack foundation, include hearsay, are not authenticated, and are irrelevant. *See* Response at 7-10. Because the court does not consider these documents in deciding on these motions, other than referencing that the TI defendants attached versions of the plan to their motion, the court will not address the plaintiffs' other evidentiary objections.

should not have "the power to set plan terms indirectly by including them in the summary plan descriptions." *Id.* at 437.

Following the Supreme Court's guidance, the court will not consider the SPD as evidence in support of the defendants' motions to dismiss. Although a summary of the plan, the SPD does not constitute the plan itself, and, therefore, it is not dispositive on this issue. Furthermore, although the TI defendants allegedly attached versions of the plan to their motion, all of the defendants failed to cite to them and instead chose to cite to the SPD. The court will not do the defendants' job for them and scour the different versions of the plan itself, as "[j]udges are not like pigs, hunting for truffles buried in briefs." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)) (internal quotation marks omitted).

The defendants also had the opportunity, in their replies, to respond to the plaintiffs' argument regarding their citation to the SPD instead of the plan and direct the court to language in the plan that supports their arguments, but failed to do so. *See* TI Reply; BCBSTX Reply. Consequently, the court denies the defendants' second argument as to why the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim, as the crux of their argument, that the plan expressly excludes JJ's treatment at Shelterwood, is based on citations to the SPD, which is not authoritative for these motions. *See* TI Motion at 7; BCBSTX Motion at 8.

- 15 -

This leaves for the court to decide on the defendants' first and third arguments as to why the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim. In their reply, the TI defendants point out that the plaintiffs do not respond to the defendants' first and third arguments as to why the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim, and, therefore, they concede these arguments. TI Reply at 3. The TI defendants are correct that, generally, the "[f]ailure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level." *Arkansas v. Wilmington Trust National Association*, No. 3:18-CV-1481-L, 2020 WL 1249570, at * 5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (citing *Black v. North Panola School District*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Kellam v. Services*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex.) (Solis, J.), *aff'd*, 560 Fed. Appx. 360 (5th Cir. 2014) (per curiam)).

Where courts have concluded that parties waived claims by failing to respond to arguments raised in substantive motions, however, these courts generally concluded that the parties failed to pursue the claims after asserting them in their complaints. See *Black*, 461 F.3d at 588 n.1 (dismissing a plaintiff's claim because her response to a motion to dismiss "failed to pursue [the claim]" and she "failed to defend her [claim] in both responses to the defendant's motion to dismiss. Her failure to pursue this claim beyond her complaint constituted abandonment."); *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (internal quotation omitted)

- 16 -

(dismissing a party's claim because the court concluded that the claim "flickered but once, dimly, on the radar screen of this litigation and then disappeared forever.").

Regarding the plaintiffs' failure to respond to the defendants' first argument as to why the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim, that the plaintiffs failed to identify specific terms in the plan that confer the benefits they seek, the court does not find that the plaintiffs failed to pursue their section 1132(a)(1)(B) claim after asserting it in their complaint. Although the defendants are correct that the plaintiffs did not respond to this argument, the plaintiffs spent a portion of their response pursing their section 1132(a)(1)(B) claim. *See* Response at 3-5. As such, the plaintiffs have made clear that they are not abandoning or waiving this claim, even if they failed to respond to the defendants' specific argument.

Furthermore, it would be inequitable to conclude that the plaintiffs waived their section 1132(a)(1)(B) claim for failing to respond to the defendants' specific argument, given that the defendants' contention centers on putting a burden on the plaintiffs that the law does not necessarily impose. The Fifth Circuit has held that "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA contexts when it may be difficult for them to access such plan provisions." *Innova Hospital San Antonio, Limited Partnership v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 728 (5th Cir. 2018).

- 17 -

Although the plaintiffs have not pled that they had difficulty gaining access to the plan documents, the defendants themselves have been unable to cite to the plan to support their arguments and instead cite to the SPD. It would be inequitable for the court to grant the defendants' motions to dismiss because the plaintiffs failed to cite to relevant plan provisions, when the defendants themselves could not even accomplish that at this stage of the case. Moreover, viewing the plaintiffs' complaint in the light most favorable to them, the plaintiffs plausibly allege that they are entitled to relief under section 1132(a)(1)(B), even without citing to relevant provisions of the plan. *See, e.g.*, Complaint at 7-8 ("Defendants breached their fiduciary duties by: . . . Failing [to] provide coverage for JJ's treatment in violation of the express terms of the [p]lan, which promise[s] benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.") The plaintiffs pled enough to nudge their arguments across the line from conceivable to plausible, and, therefore, the court denies the defendants' motions to dismiss on this issue.

Regarding the plaintiffs' failure to respond to the defendants' third argument, that the court should dismiss the plaintiffs' section 1132(a)(1)(B) claim because the plaintiffs cannot recover the benefits they seek based on their argument that the defendants failed to provide a full and fair review, the court agrees in part and disagrees in part with the defendants. As described above, the plaintiffs have pursued

their section 1132(a)(1)(B) claim in their response, and, therefore, the court will not dismiss their entire section 1132(a)(1)(B) claim, even if the plaintiffs did not respond to the defendants' third argument as to why the court should dismiss this claim.

The court agrees, however, that the plaintiffs have neither pursued their argument that the they are entitled to benefits because of the defendants' alleged lack of full and fair review or even explained how this argument is plausible. The plaintiffs' response omits any mention of this contention or a response to the defendants' motions on this argument. *See* Response. As such, the court concludes that the plaintiffs have abandoned this basis for seeking relief under section 1132(a)(1)(B), and grants the defendants' motions to dismiss on this specific issue.

2. *The Plaintiffs Cannot Plausibly Allege Their Section 1132(a)(3) Claim Because Their Section 1132(a)(1)(B) Claim Provides Adequate Relief*

The defendants contend that the court should dismiss the plaintiffs' section 1132(a)(3) claim because their section 1132(a)(1)(B) claim already provides adequate relief, and section 1132(a)(3) is only appropriate when there are no other available avenues for remedy. *See* TI Motion at 14-15; BCBSTX Motion at 18-19.[3]

---

[3]     The defendants also contend that the plaintiffs' section 1132(a)(3) claim contains conclusory allegations that do not meet the rule 12(b)(6) standard, and, therefore, the plaintiffs fail to plausibly allege that they are entitled to relief. *See* TI Motion at 9-14; BCBSTX Motion at 11-18. Because the court agrees with the defendants' argument that the plaintiffs' section 1132(a)(3) claim is duplicative of their section 1132(a)(1)(B) claim and dismisses the plaintiffs' section 1132(a)(3) claim for this reason, the court will not address the defendants' other contentions.

The plaintiffs respond by arguing that although what the defendants say "is generally true, the Fifth Circuit has not ruled on the viability of claims under" MHPAEA and "[w]hether it is labeled as a 29 U.S.C. § 1132(a)(1)(B) claim or a 29 U.S.C. § 1132(a)(3) claim, [the plaintiffs have] demonstrated that [their] MHPAEA claim is well pled and plausible."  Response at 6-7.

The Supreme Court has explained that section 1132(a)(3) serves as a "catchall" and "act[s] as a safety net, offering appropriate equitable relief for insures caused by violations that § [1132] does not elsewhere adequately remedy."  *Varity Corporation v. Howe*, 516 U.S. 489, 512 (1996) (internal quotation omitted). "Following Supreme Court guidance, the vast majority of circuit courts have held that if a plaintiff can pursue benefits under the plan pursuant to [§ 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [§ 1132(a)(3)]."  *Innova*, 892 F.3d at 733 (internal quotation omitted); see also *Manuel v. Turner Industries Group, L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018); *Swenson v. United of Omaha Life Insurance Company*, 876 F.3d 809, 812 (5th Cir. 2017); *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610-11 (5th Cir. 1998).  Even if a plaintiff's section 1132(a)(1) "claim ultimately proves unsuccessful[,]" that plaintiff's section 1132(a)(3) claim is stilled barred "because the relevant consideration is whether Congress has provided a mechanism to vindicate the plaintiff's *injury*."  *Corsaro v. Columbia Hospital at Medical City Dallas Subsidiary LP*, 3:21-CV-01748-N, 2022 WL

2209944, at *2 (N.D. Tex. June 21, 2022) (Godbey, J.) (citing *Manuel*, 905 F.3d at 865) (emphasis in original).

Here, the plaintiffs' section 1132(a)(3) claim is duplicative of their section 1132(a)(1)(B) claim. Whichever way the plaintiffs frame their allegations, whether as a breach of fiduciary duty, breach of contract, failing to properly administer benefits, applying exclusion criteria that the plan does not contain, or applying more restrictive standards to JJ's treatment than for other forms of treatment, all of the plaintiffs' allegations boil down to one issue: whether the defendants improperly denied covering JJ's treatment and withheld benefits from the plaintiffs.

The plaintiffs attempt to distinguish their section 1132(a)(3) claim as being different from their section 1132(a)(1)(B) claim by using the defendants' alleged MHPAEA violations as their vehicle for asserting the section 1132(a)(3) claim. The relief that the plaintiffs seek for the section 1132(a)(3) claim, however, illustrates that it is duplicative of their section 1132(a)(1)(B) claim. The plaintiffs request relief that centers on making them whole for the defendants' refusal to cover JJ's treatment by asking the court to: (1) declare that the defendants violated MHPAEA; (2) enforce an injunction that prevents the defendants from continuing to violate MHPAEA and requires them to comply with the statute; (3) order the defendants to reform the plan's terms to comply with MHPAEA; (4) award the plaintiffs any funds wrongfully withheld from them because of the defendants' MHPAEA violations; (5)

- 21 -

award the plaintiffs surcharge and restitution; and (6) order the defendants to stop denying the plaintiffs' claims.  Complaint at 10-11.

Section 1132(a)(1)(B), on the other hand, allows the plaintiffs to "recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  As such, section 1132(a)(1)(B) provides the plaintiffs with an adequate avenue for the remedies that they seek through section 1132(a)(3), as described above.  The court, therefore, dismisses the plaintiffs' section 1132(a)(3) claim.

### 3.  *The Court Denies the Plaintiffs' Request for Leave to Amend*

In their response, the plaintiffs seek leave to amend their complaint should the court grant the defendants' motions to dismiss.  Response at 10.  Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a).  Whether a motion to amend should be granted is within the discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  When exercising its discretion, the court may consider such factors as "undue delay, . . . undue prejudice[,]" or "futility of amendment."  *Id.*

Here, the court concludes that allowing the plaintiffs the ability to amend their complaint would cause the defendants undue delay, unfair prejudice, and any

- 22 -

amendment would be futile.  Regarding the plaintiffs' full and fair review allegation that is part of their section 1132(a)(1)(B) claim, the plaintiffs had the opportunity to pursue this allegation in their response, after the defendants called it into question, but wholly omitted it from their pleading.  Given the plaintiffs' decision to omit any mention of this allegation from their response, thereby abandoning it, it would cause the defendants undue delay and unfair prejudice to now allow the plaintiffs the opportunity to respond to the defendants' motions by amending their complaint.  Furthermore, regarding the plaintiffs' section 1132(a)(3) claim, allowing the plaintiffs' the opportunity to amend their complaint would be futile, as this claim is wholly duplicative of their section 1132(a)(1)(B) claim that affords them adequate relief.  The plaintiffs' request for leave to amend their complaint, therefore, is denied.

## III.  CONCLUSION

For the reasons stated above, the defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

May 24, 2023.

**A. JOE FISH**
**Senior United States District Judge**

- 23 -